[Cite as *In re G. McC.*, 2013-Ohio-5310.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


IN RE:                                  :         JUDGES:
                                        :
     G. McC.                            :         Hon. Sheila G. Farmer, P.J.
                                        :         Hon. John W. Wise, J.
                                        :         Hon. Craig R. Baldwin, J.
                                        :
                                        :
                                        :
                                        :         Case No. 2013CA00103 and
                                        :                 2013CA00106
                                        :
                                        :
                                        :
                                        :         O P I N I O N


CHARACTER OF PROCEEDING:                 Appeal from the Stark County Court
                                         of Common Pleas, Family Division,
                                         Case No. 2012 JCV 01245


JUDGMENT:                                Affirmed


DATE OF JUDGMENT:                        December 2, 2013


APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant Mother

LISA A. LOUY                             STACY M. ZIPAY
Stark County Department                  Stark County Public Defender
of Job and Family Services               201 Cleveland Ave. SW, Suite 104
300 Market Avenue North                  Canton, OH 44702
Canton, OH 44702
                                         For Defendant-Appellant Father

                                         RODNEY A. BACA
                                         Schnars, Baca & Infantino, LLC
                                         610 Market Avenue North
                                         Canton, OH 44702

*Baldwin, J.*

{¶1}    Appellants K. McC. and  D.J. nka McC. appeal from the April 26, 2013 Judgment Entry of the Stark County Court of Common Pleas, Family Court Division.

STATEMENT OF THE FACTS AND CASE

{¶2}    G. McC.  (DOB 10/16/12) is the biological child of appellant K. McC. (hereinafter "appellant father") and appellant D.J. nka McC. (hereinafter "appellant mother").   On December 20, 2012, a complaint was filed by Stark County Department of Job and Family Services ("SCDJFS") alleging that G. McC. was a neglected or dependent child.  A shelter care hearing was held on December 21, 2012.  Pursuant to a Judgment Entry filed on the same date, the trial court found probable cause and the child was placed in the temporary custody of her maternal aunt.   After appellants refused to disclose the child's location, appellants were placed in the custody of the Stark County Sheriff's Department where they remained briefly until the child was located.

{¶3}    On March 14, 2013, a hearing was held before a Magistrate. At the hearing, Michele Fookes, a case worker with the Columbiana County Department of Job and Family Services, Children's Services Division, testified that she started working with appellant mother in September of 2011 after appellant mother had given birth to an older child in July of 2011. Fookes testified that the agency had concerns that appellant mother was not bonding with such child, a son, and that she was homeless. A report indicated that appellant mother was saying that she was going to hurt her son by dropping him, that appellant had no diapers, bottles or clothing for her son and that appellant did not know what her plans were going to be.

{¶4}    Fookes stated that the agency drew up a case plan for appellant mother that required her to complete a psychological examination, undergo individual counseling, start anger management,  find stable housing and income, and  attend parenting classes. She testified that appellant mother did not complete a psychological examination or receive counseling, never completed  the anger management program, and completed parenting classes the week before  the January 24, 2013 court hearing. Appellant mother also moved from place to place and did not have any source of income until she became involved with appellant father and relied on his income. Fookes also testified that she had a hard time getting hold of appellant mother because she had at least eight different residences and her telephone was not always working. Fookes was involved with the case in Columbiana County from September of 2011 until January of 2013.

{¶5}    Fookes also testified that she was able to set up visitation between appellant mother and her son, but that appellant mother did not consistently attend the visits. According to Fookes, appellant mother attended four out of ten visits scheduled by the agency.  When temporary custody of the child was transferred to the eventual legal guardians, the Browns, in February of 2012, they supervised the visits. Fookes stated that she thought appellant mother attended three of such visits.  The Browns, who were appellant mother's half sister and her husband, were granted legal custody of appellant mother's son on October 23, 2012.  When the child at issue in this case was born, appellant mother was residing in Stark County, Ohio.

{¶6}    On cross-examination, Fookes testified that appellant mother stipulated to the change of legal custody of her son to the Browns and that G. McC., the child in this

case, was never the subject of the Columbiana County case. She stated that when she saw appellant mother with G. McC , the child appeared to be healthy, was clean and that she had no concerns at that time. She also testified that when she visited appellant mother's house after October of 2012, she had no concerns about safety.  She further agreed that at the time of the final hearing in the Columbiana case in January of 2013, she did not have concerns with the child in this case being with appellant and did not make any referral to Stark County.

{¶7}     The next witness to testify was Lindsay DeHaas, an investigative worker assigned to G. McC.'s case after SCJFS received a referral on December 19, 2012. SCDJFS had concerns that appellant mother had lost custody of her son in Columbiana County and also concerns about the condition of the house because there allegedly were bed bug infestations, animal feces on the floor and a dead fish in a fish tank. The agency also had concerns about mental health issues.  When DeHaas went to the house in December of 2012, she did not observe feces or dead fish, although the house was cluttered. Appellants admitted that there was a bed bug infestation, but would not allow DeHaas   upstairs. Appellants denied that there were mental health issues and appellant mother told DeHaas that she was in parenting classes. When DeHaas told them that they would be asked to complete some services and agree to a voluntary safety plan, appellants refused to sign all releases or comply with a safety plan. Appellants were resistant to talking with DeHaas who believed that appellant father was attempting to control appellant mother's responses to questions.

{¶8}     When asked about the risk to G. McC., DeHaas testified that appellant mother had failed to complete any case plan services in Columbiana County and had

lost custody of her son in such case. She stated that there were no services in place to reduce the risk to G. McC. and also testified that after the trial court ordered that the child be placed into the temporary custody of SCJFS, appellants were uncooperative and refused to produce the child and gave false information about where she was located.  DeHaas indicated that appellant father was aware of appellant mother's case in Columbiana County because both appellants answered questions about such case.

{¶9}    On cross-examination, DeHaas testified that during the same visit, appellant mother had adequate supplies for G. McC. and that the child did not have observable marks or bruises on her and appeared to be happy and healthy.  She testified that appellant mother seemed unsure how to handle the child, who was fussy, and that appellant father had to take over.  DeHaas agreed that appellants had been in their current home for several months and that when she went to their home on December 19, 2012 for a home visit, she did not believe that the child needed to be removed from the home, but that a safety plan was needed.  DeHaas testified that she had information that appellant father had unaddressed mental health issues, but was unable to verify the same and was not able to verify whether or not the bed bug infestation had been taken care of by appellants' landlord because appellants would not sign a release for the landlord.

{¶10}   During cross-examination, De Haas also testified that appellant father had told her that he was receiving VA benefits to pay the landlord, but that she was unable to verify VA income or rental payments due to appellants' refusal to sign releases.

{¶11}   At the hearing, appellant mother was called as if on cross. She testified that she married appellant father in January of 2013. Appellant mother testified that she

did not complete the psychological examination in her Columbiana County Case, but had completed one since. She also testified that she had not completed counseling during the time of her case plan and was not in counseling. Appellant mother also stated that she went to one anger management class and completed a parenting class during her Columbiana County case plan. She indicated that she currently was in parenting classes through Incredible Years, Community Services, 1, 2, 3, 4 Parenting Class and was currently enrolled in Goodwill Parenting. Appellant mother testified that she voluntary enrolled in these classes and was not ordered to enroll in them.

{¶12} Appellant mother also testified that although she was not employed, there was income through her husband. She admitted that when she was asked to sign releases in December of 2012, she did not do so and did not sign the safety plan that DeHaas asked her to sign. Appellant mother testified that she did not allow the case worker into the upper level of her house.

{¶13} Jennifer Brown, appellant mother's half sister, testified that she and her husband had received custody of appellant mother's son through Columbiana County. She testified that they were supervising visits between appellant mother and such child from February of 2012 through May of 2012 and that about twenty (20) visits had been scheduled. She further testified that appellant mother did not attend all of them and that they stopped doing visits because appellant mother was "violent, aggressive, loud" towards Brown's husband. Transcript of March 14, 2012 hearing at 43. At the time, appellant mother's son was present.

{¶14} Appellant mother also testified on direct. She testified that they were receiving cash assistance while G. McC. was in their home and were able to purchase

supplies for her.  She testified that they had been residing at the same location for seven months and had a telephone. Appellant mother indicated that she refused to sign the releases because she was overwhelmed that Children's Services was at their house and did not understand the consequences of her refusal to sign. She testified that they did not allow DeHaas upstairs because they did not want her to get bit by bed bugs. According to her, the landlord resolved the bed bug issue a week or two later.

{¶15}   Appellant father testified that he was currently in the military and was in the reserves.  He testified that he received schooling and other assistance, but was not enrolled in school. Appellant father testified that he received assistance with his rent starting in November of 2012.   He stated that when DeHaas came over, he was scared because he was aware of appellant mother's past history with Children's Services. Appellant father further testified that he did not remember any discussion about any consequences or ramifications resulting from not signing the releases.

{¶16}   Appellant father also testified that he was gone more than one weekend per month for the reserves and that appellant mother took care of G. McC. when he was gone.  He testified that he could be gone for a day to five days to two weeks a month depending on whether or not it was a reserve weekend.

{¶17}   Following the hearing, the Magistrate, in a decision filed on March 15, 2013, found G. McC. to be a dependent child pursuant to R. C. 2151.04(B) and (C) and scheduled a disposition hearing for March 19, 2013. Both parties filed objections to such decision and the trial court scheduled an objection hearing for April 23, 2013. As memorialized in a Judgment Entry filed on April 1, 2013, the trial court remanded the matter to the Magistrate for findings of fact.  An Amended Magistrate's decision was

filed on April 18, 2013. The Magistrate, in such decision, found G. McC. to be a dependent child pursuant to R. C. 2151.04(C). The trial court approved and adopted the Magistrate's Decision on the same date.

{¶18} After the April 23, 2013 hearing, the trial court, pursuant to a Judgment Entry filed on April 26, 2013, approved and adopted the Magistrate's Decision.

{¶19} Appellant father now appeals from the trial court's April 26, 2013 Judgment Entry, raising the following assignment of error on appeal:

{¶20} THE FINDING BY THE COURT THAT THE CHILD WAS DEPENDENT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR BASED ON THE INSUFFICIENT EVIDENCE AND CONTRARY TO LAW.

{¶21} His appeal has been assigned Case No. 2013 CA 00103.

{¶22} Appellant mother also appeals from the  trial court's April 26, 2013 Judgment Entry, raising the following assignment of error on appeal:

{¶23} THE TRIAL COURT ERRED IN FINDING THAT THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PROVED BY CLEAR AND CONVINCING EVIDENCE THAT [G. Mc.] IS A DEPENDENT CHILD PURSUANT TO R.C. 2151.04(C).

{¶24} Her appeal has been assigned Case No. 2013 CA 00106.

{¶25} For purposes of judicial economy, we shall address the two appeals together.

{¶26} Case No. 2013 CA 00103 and Case No. 2013 CA 2016

{¶27} Appellants, in their respective assignments of error, challenge the trial court's finding that G. McC. was a dependent child.

{¶28}   As this Court  stated in *In re Pierce,* 5th Dist. Muskingum No. CT2008–0019, 2008–Ohio–6716, a trial court's adjudication of a child as abused, neglected, or dependent must be supported by clear and convincing evidence. R.C. 2151.35. Clear and convincing evidence is that which produces "in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In Re: Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). When this Court reviews an adjudication to determine whether the judgment is supported by clear and convincing evidence, we must determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing degree of proof. *In Re: Christian,* 4th Dist. Athens No. 04CA10, 2004–Ohio–3146, citations omitted.

{¶29}   Dependency is defined by R.C. 2151.04, which provides in pertinent part:

{¶30}   "As used in this chapter, 'dependent child' means any child:

{¶31}   "(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;.."

{¶32}   The focus of a charge that a child is dependent under R.C. 2151.04(C) is on the child and his condition and not on the faults of the parents." *In Re Bishop,* 36 Ohio App.3d 123, 521 N.E.2d 838 (5th Dist.1987); *In re: Bibb,* 70 Ohio App.2d 117, 435 N.E.2d 96 (1st Dist.1980); *In re: Riddle,* 79 Ohio St.3d 259, 680 N.E.2d 1227 (1977).

{¶33}   We find that the judgment finding the child in this case to be dependent is not against the manifest weight of the evidence.  As is stated above, appellant mother, in her previous case in Columbiana County, did not complete her case plan services and lost custody of her son.  She, in such case, did not complete anger management

and parenting classes and did not obtain individual counseling. Michele Fookes testified that a report in the Columbiana County case indicated that appellant mother was saying that she was going to hurt her son by dropping him and appellant mother's own half sister testified that appellant mother was violent, aggressive and loud during a visit with her son. With respect to the child in this case, there was testimony that appellant mother was unsure how to handle the child when she was fussy and handed her off to appellant husband who, by his own admission, was gone regularly. As a result, appellant mother was sometimes home alone with the child.

{¶34} Moreover, both appellants, when asked to do so by DeHass, refused to sign releases of information to comply with a safety plan and refused to cooperate with the agency. When DeHaas visited their apartment in December of 2012, appellants refused her access to the upper floor. In addition, there was testimony that appellant father attempted to control what appellant mother said to DeHaas. Furthermore, after the shelter care hearing, both appellants were ordered to produce G. McC. Not only did they refuse to do so, but they gave false information to the court regarding her location.

{¶35} Based on the foregoing, we find that sufficient, credible evidence existed to support the trial court's adjudication of the child as a dependent child.

{¶36} Appellant father's sole assignment of error in Case No. 2013 CA 00103 and appellant mother's sole assignment of error in Case No. 2013 CA 00106 are, therefore, overruled.

{¶37}   Accordingly, the judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Baldwin, J.

Farmer, P.J. and

Wise, J. concur.

_____
HON. CRAIG R. BALDWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE

CRB/dr

[Cite as *In re G. McC.*, 2013-Ohio-5310.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| | : | |
| G. McC. | : | |
| | : | JUDGMENT ENTRY |
| | : | |
| | : | |
| | : | |
| | : | CASE NO. 2013CA00103 and |
| | | 2013CA00106 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Family Court Division is affirmed. Costs assessed to appellants.

_____
HON. CRAIG R. BALDWIN


_____
HON. SHEILA G. FARMER


_____
HON. JOHN W. WISE