[Cite as *In re M.S.*, 2014-Ohio-5055.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| M.S.1, J.S.1, M.S.2, J.S.2, M.S.3 | : | Hon. Sheila G. Farmer, J. |
| | : | Hon. John W. Wise, J. |
| | : | |
| | : | Case No. CT2014-0023 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Juvenile Division, Case Nos.
21330204, 21330205, 21330206,
21330207, and 21330208

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      November 10, 2014

APPEARANCES:

For Appellant-Mother

R. SCOTT PATTERSON
2609 Bell Street
Zanesville, OH 43701

For Sam Stewart

BONNIE VANGEOFF
P.O. Box 4174
Dublin, OH 43016

Guardian ad Litem

RUTHELLEN WEAVER
542 South Drexel Avenue
Bexley, OH 43209

For Appellee-MCCS

MOLLY L. MARTIN
27 North Fifth Street
P.O. Box 189
Zanesville, OH 43702-0189

For M.S.1

JAMIE WILLIAMS
P.O. Box 53
Duncan Falls, OH 43734

For J.S.1, M.S.2, J.S.2, M.S.3

DREAMA BOGART
P.O. Box 30402
Gahanna, OH 43230

*Farmer, J.*

{¶1}   On September 24, 2013, appellee, Muskingum County Children Services, filed a complaint alleging M.S.1 (born April 9, 1997), J.S.1 (born November 14, 1998), M.S.2 (born November 5, 2000), J.S.2 (born May 22, 2003), and M.S.3 (born May 7, 2005) to be neglected and dependent children.   Mother of the children is appellant, Jennifer Sealover.   Father of J.S.1 and M.S.2 is Sam Stewart; father of J.S.2 and M.S.3 is Franklin Sealover.   Biological father of M.S.1 is Sam Stewart, but the child was adopted by Franklin Sealover.

{¶2}   An adjudicatory hearing was held on March 18, 2014.   Appellee dismissed the neglect allegation.   By entry filed March 26, 2014, the trial court found the children to be dependent, and ordered legal custody of M.S.1 to appellant, legal custody of J.S.1 and M.S.3 to maternal aunt and uncle, Jessica and Jeremiah Jewell, and legal custody of J.S.2 to maternal aunt Janet Stout.   An additional hearing was held on April 7, 2014. By entry filed April 18, 2014, the trial court placed M.S.2 in the temporary custody of his father, Sam Stewart.

{¶3}   Appellant filed an appeal and this matter is now before this court for consideration.   Assignments of error are as follows:

I

{¶4}   "THE TRIAL COURT'S JUDGMENT OF DEPENDENCY, AND THAT THE MINOR CHILDREN'S BEST INTEREST WOULD BE SERVED BY GRANTING OF LEGAL CUSTODY OF J.S.1, J.S.2, AND M.S.3 TO MATERNAL AUNTS, AND THAT MCCS HAD MADE REASONABLE EFFORTS TOWARD REUNIFICATION, WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE WHERE

THEIR WAS NO EVIDENCE THAT MOTHER HAD NOT COMPLETED HER CASE PLAN OBJECTIVES."

II

{¶5} "THE TRIAL COURT COMMITTED PLAIN ERROR BY NOT COMPLYING WITH JUVENILE RULE 29 REGARDING THE CONSEQUENCES OF MOTHER'S AGREEMENT AS TO A DEPENDENCY ADJUDICATION AND DISPOSITION OF LEGAL CUSTODY TO NON-PARENTS."

I

{¶6} Appellant claims the trial court findings of dependency and best interest was against the manifest weight and sufficiency of the evidence. We disagree.

{¶7} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶8} As explained by this court in *In re G. McC.,* 5th Dist. Stark Nos. 2013CA00103 and 2013CA00106, 2013-Ohio-5310, ¶ 28:

As this Court stated in *In re Pierce,* 5th Dist. Muskingum No. CT2008–0019, 2008-Ohio-6716, a trial court's adjudication of a child as abused, neglected, or dependent must be supported by clear and convincing evidence. R.C. 2151.35. Clear and convincing evidence is that which produces "in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In Re: Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954). When this Court reviews an adjudication to determine whether the judgment is supported by clear and convincing evidence, we must determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing degree of proof. *In Re: Christian,* 4th Dist. Athens No. 04CA10, 2004–Ohio–3146, citations omitted.

{¶9}   R.C. 2151.04 defines "dependent child" as any child:

(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;

(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;

(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;

(D) To whom both of the following apply:

(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

{¶10} If a child is adjudicated as a dependent child, a trial court may "[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."

{¶11} In its judgment entry filed March 26, 2014, the trial court determined the following:

After hearing testimony from Lacie James of Muskingum County Children Services, the Court made a finding of dependency by clear and convincing evidence. Specifically, the Court found that all five children met the definition of Ohio Revised Code Section 2151.04 in that they each lacked adequate parental care or support by reason of mental or physical condition of the children's parents and that their condition or environment

is such as to warrant the state, in the interests of the children, in assuming the children's guardianship.  The Court found that mother was overwhelmed by trying to parent the children by herself, Mr. Sealover was in the home not assisting with the parenting, domestic violence was occurring in the home between the mother and Mr. Sealover in the presence of the children, Mr. Sealover refused treatment for serious alcohol abuse, the children were not getting to school consistently and exhibiting behavior problems as well as running unsupervised out in the community.

The Court found that Muskingum County Children Services had made reasonable efforts to prevent the need for placement outside the homes of the mother and fathers as well as to reunify the children with their parents.  Specifically, Muskingum County Children Services provided case management, mental health referrals for mom, parenting referral for the parents, and safety planning Mr. Sealover out of mom's home.

{¶12}  The trial court then found it was in the best interest of J.S.1, J.S.2, and M.S.3 to be placed in the legal custody of maternal aunts.

{¶13}  Appellee has had a long involvement with the family prior to the complaint being filed.  Commencing with the delinquency of J.S.1, the family has had multiple services, including family counseling, individual counseling, and case management. March 18, 2014 T. at 17.  At the time of the filing of the complaint on September 24, 2013, all five children were living with appellant.  *Id.* at 16-17.  The children were not

attending school, were running all over the neighborhood, and had behavioral problems. *Id.* at 18.

{¶14} Despite family counseling by Thompkins Child and Adolescent Center and the placement of Sherry Hampton in the home, the family was not "functionable" and was "chaotic." *Id.* at 19. The children were "not behaving, not going to sleep when they were supposed to, being out of the house, running down the streets." *Id.* The Zanesville Police Department, as well as the intervention caseworker Lacie James, received numerous telephone calls about the children. *Id.* at 19-20. Once school started, the children did not go to school. *Id.* at 20. All the children had missed multiple days of school or had truancy issues. *Id.* at 23. Despite numerous services, there was never any improvement. *Id.* at 21.

{¶15} The filing of the complaint sub judice was precipitated by M.S.3's appearance at school, disheveled, dirty, with no shoes, and not talking to anyone. *Id.* at 24. At the time, appellant was experiencing physical and mental health issues. *Id.* at 24-25. The children also had "behavioral issues, mental health concerns," but "since being removed, diagnoses have dropped off." *Id.* at 25. J.S.1 was placed outside the home with his maternal aunt and uncle and did well. *Id.* at 22. When he returned home, he went right back to poor behaviors and wanted out of the home with appellant. *Id.* at 23.

{¶16} Appellant's parenting was described as "inconsistent and ineffective." April 7, 2014 T. at 15. The children did not listen to her, and two of the children "had a tendency to be pretty out of control." *Id.* She would attempt to get one of the younger children under control by sitting on him. *Id.* When the children did not listen to her, she

would follow-up with increased screaming "with little to no effect." *Id.* at 16-17.  There were two incidents wherein J.S.1 "was holding a kitchen knife to himself." *Id.* at 16.

{¶17} Father of J.S.2 and M.S.3, Franklin Sealover, was an alcoholic and refused to go to treatment.  March 18, 2014 T. at 21.  He was involved in domestic violence reports in the home. *Id.*  Appellee safety planned him out of the home. *Id.*

{¶18} From the many incidents of unruliness, truancy, and behavioral problems that appellant could not address, we find the trial court's finding of dependency under R.C. 2151.04 to be supported by clear and convincing evidence.

{¶19} Having made a finding of dependency for all five children, the trial court found appellee made reasonable efforts to prevent placement outside the home, as well as to reunification. *See,* Entry filed March 26, 2014.  The trial court then considered the best interests of the children and ordered legal custody of M.S.1 to appellant, legal custody of J.S.1 and M.S.3 to maternal aunt and uncle, Jessica and Jeremiah Jewell, and legal custody of J.S.2 to maternal aunt Janet Stout.  By entry filed April 18, 2014, the trial court placed M.S.2 in the temporary custody of his father, Sam Stewart.

{¶20} Because legal custody of M.S.1 was awarded to appellant, we presume this best interest disposition is not being contested.  In addition, appellant does not appear to be contesting the order of temporary custody of M.S.2 to father Sam Stewart, as M.S.2 and/or the temporary custody order are not included in the assignment of error.  However, appellant filed a notice of appeal on the trial court's April 18, 2014 entry which deals specifically with the best interest disposition of M.S.2.  Therefore, we will review the disposition of M.S.2.

{¶21} J.S.1 and M.S.3 have been with maternal aunt and uncle Jessica and Jeremiah Jewell since the time of their removal from the home. March 18, 2014 T. at 31-32. Their home was approved via a home study and the placements were going very well. *Id.* at 32. Both Mr. and Mrs. Jewell testified they were financially and emotionally prepared to care for the two children, and would facilitate parental visits. *Id.* at 40-42, 51-52.

{¶22} J.S.2 has been with maternal aunt Janet Stout since the time of his removal from the home. *Id.* at 30*.* Her home was approved via a home study and the placement was "going very well for him." *Id.* He was able to see his other siblings in this placement. *Id.* Ms. Stout testified to her willingness and ability to care for J.S.2. *Id.* at 34-37. She is a preschool teacher. *Id.* at 36.

{¶23} Sam Stewart testified he has completed his case plan and will continue to cooperate with appellee. April 7, 2014 T. at 148, 175, 178-179. He testified he wanted M.S.2 to reside with him and he would facilitate visitations with other family members. *Id.* at 155, 175, 176-177, 179-180. Character witnesses testified he would be a good parent. *Id.* at 185, 192-193.

{¶24} A clinical psychologist, Howard Beazel, Ph.D., evaluated appellant and found she has a "personality disorder that leads to acute episodes of more intense mental illness, like the intense anxiety or depressive episodes," and her condition is not likely to change. *Id.* at 37-38, 40-41. She has a history of being noncompliant with mental health treatment and taking medication. *Id.* at 41.

{¶25} Ms. James testified appellant participates in her services, but "doesn't act on what she learns***[s]o then there's no change." *Id.* at 86. She testified to concerns

of placing M.S.2 with appellant.  *Id.*  Appellant was recently unsuccessfully terminated from counseling due to her refusal "to participate in the program as recommended."  *Id.* at 199.  She stated Mr. Stewart was cooperative with appellee.  *Id.* at 89, 204.  His home is appropriate and there is a steady source of income.  *Id.* at 97.  M.S.2 expressed a desire to reside with his father.  *Id.* at 102, 125, 139.  However, Ms. James would prefer legal custody of M.S.2 to appellant's brother, Josh Davis.  *Id.* at 95*.*  Appellant also preferred custody of M.S.2 with her brother if not with her.  *Id.* at 129.

{¶26}  Josh Davis resided with his sister, Janet Stout.  *Id.* at 120.  He was in the process of getting married and moving out, and would take M.S.2 with him.  *Id.* at 120-121.  There was little to no testimony regarding Mr. Davis's fiancé.  *Id.* at 214-215.

{¶27}  The trial court conducted an in camera interview with M.S.2.  *Id.* at 217.

{¶28}  Given the testimony presented, we find the evidence supports the trial court's best interest dispositions.

{¶29}  Assignment of Error I is denied.

II

{¶30}  Appellant claims the trial court failed to comply with Juv.R. 29(D).  We disagree.

{¶31}  Juv.R. 29 governs adjudicatory hearing.  Subsection (D) states the following:

**(D) Initial procedure upon entry of an admission**

The court may refuse to accept an admission and shall not accept an admission without addressing the party personally and determining both of the following:

(1) The party is making the admission voluntarily with understanding of the nature of the allegations and the consequences of the admission;

(2) The party understands that by entering an admission the party is waiving the right to challenge the witnesses and evidence against the party, to remain silent, and to introduce evidence at the adjudicatory hearing.

The court may hear testimony, review documents, or make further inquiry, as it considers appropriate, or it may proceed directly to the action required by division (F) of this rule.

{¶32} The nature and scope of the proceedings were placed on the record at the commencement of the March 18, 2014 hearing. Appellee dismissed the neglect allegation as to all the children and elected to proceed on the issue of dependency. March 18, 2014 T. at 7-8. Appellant never stipulated to dependency, but consented via her attorney to the dispositions of M.S.1, J.S.1, J.S.2, and M.S.3. There remained the contested disposition of M.S.2 between his father, Sam Stewart, and appellant's brother, Josh Davis. *Id.* at 7-8, 9-10.

{¶33} At the close of the preliminary discussion, appellant's trial counsel stated: "Your Honor, I just want to state for the record that in light of the agreement that's been

reached here today and Children Services dropping the neglect and allowing [M.S.1] to return home, I will not be objecting to hearsay." *Id.* at 15.

{¶34} The trial court then proceeded to conduct an adjudicating hearing. Four witnesses were called and cross-examined. On the record, the trial court made an independent finding of dependency apart from any agreements, and found appellee had made reasonable efforts at reunification. *Id.* at 60-61.

{¶35} Our examination of the record does not reveal any "admissions" by appellant. The stipulation to hearsay evidence was done after discussions on the record and before the subpoenaed witnesses testified on the dependency issue. Further, the trial court made independent findings on the issue of dependency and reasonable efforts by appellee relative to the case plan.

{¶36} It should be further noted, as the staff notes to Juv.R. 29 point out, the intent of the rule is to place a juvenile adjudication and admissions on the same heighten level as Crim.R. 11 (involving delinquency charges).

{¶37} Upon review, we do not find a violation of Juv.R. 29(D).

{¶38} Assignment of Error II is denied.

{¶39} The judgment of the Court of Common Pleas of Muskingum County, Ohio, Juvenile Division is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Wise, J. concur.

SGF/sg 1024