[Cite as *In re: K.M.*, 2018-Ohio-3144.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN THE MATTER OF: K.M. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| IN THE MATTER OF: K.M. | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | |
| | : | Case Nos.  18CA07 |
| | : |           18CA08 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:                Appeal from the Court of Common
                                        Pleas, Juvenile Division, Case Nos.
                                        2017-DEP-00068  and  2017-DEP-
                                        00069


JUDGMENT:                               Affirmed




DATE OF JUDGMENT:                       August 7, 2018




APPEARANCES:

For Appellee                            For Appellant-Mother

TIFFANY D. BIRD                         DARIN AVERY
731 Scholl Road                         105 Sturges Avenue
Mansfield, OH  44907                    Mansfield, OH  44903

*Wise, Earle, J.*

{¶ 1}   Appellant-Mother, R.H., appeals the December 26, 2017 judgment entries of the Court of Common Pleas of Richland County, Ohio, Juvenile Division, finding her children to be dependent and disposition was timely.  Appellee is the Richland County Children Services Board.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On April 19, 2017, appellee filed two separate complaints, alleging K.M., born July 9, 2009, and K.M., born July 14, 2011, to be abused, dependent, and neglected children.  Mother of the children is appellant; father of K.M born in 2011 is K.M; father of K.M. born in 2009 is unknown.

{¶ 3}   An adjudicatory hearing before a magistrate was held on June 30, 2017.  Father admitted to dependency.  By decisions filed July 14, 2017, the magistrate found the children to be dependent.  Custody of the children remained with appellant pending disposition.

{¶ 4}   A dispositional hearing was held before the magistrate on August 4, 2017.  Prior to the start of the hearing, appellant made an oral motion to dismiss for failure to hold the dispositional hearing in a timely manner under R.C. 2151.35(B)(1).  The magistrate denied the motion.  By decisions filed August 17, 2017, the magistrate placed the children in the temporary custody of the children's paternal grandmother, B.M., with an order of protective supervision to appellee, and ordered a revision of the case plan.

{¶ 5}   Appellant timely filed objections in both cases, claiming the findings of dependency were not supported by the record, and disposition was untimely.  By

judgment entries filed December 26, 2017, the trial court denied the objections and affirmed and adopted the magistrate's decisions.

{¶ 6}   Appellant filed an appeal in each case and this matter is now before this court for consideration.  The assignments of error are identical and are as follows:

I

{¶ 7}   "THE TRIAL COURT DID NOT HAVE COMPETENT, CREDIBLE EVIDENCE SUPPORTING ITS FACTUAL FINDINGS."

II

{¶ 8}   "THE COURT'S FINDINGS WERE INSUFFICIENT TO WARRANT A FINDING OF DEPENDENCY UNDER ORC 2151.04(C)."

III

{¶ 9}   "THE COURT'S FINDING OF DEPENDENCY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

IV

{¶ 10} "THE COURT SHOULD HAVE DISMISSED THE CASE ON MOTHER'S MOTION IN ACCORDANCE WITH RC 2151.35(B)(1)."

V

{¶ 11} "THE TRIAL COURT MAGISTRATE SHOULD HAVE RECUSED HIMSELF TO PREVENT THE APPEARANCE OF IMPROPRIETY."

IV

{¶ 12} We will address the fourth assignment of error first because the arguments therein challenge the trial court's jurisdiction to enter judgment.  Appellant claims the trial

court should have dismissed the cases because the dispositional hearing was untimely under R.C. 2151.35(B)(1).  We disagree.

{¶ 13} R.C. 2151.35(B)(1) states the following:

> (B)(1) If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing.  The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing.  The dispositional hearing may not be held more than thirty days after the adjudicatory hearing is held.  The court, upon the request of any party or the guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel.  The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed.
>
> If the dispositional hearing is not held within the period of time required by this division, the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice.

{¶ 14} This language is mirrored in Juv.R. 34(A).

{¶ 15} In her appellate briefs at 12, appellant argues the dispositional hearing was held on day one hundred and seven, outside the ninety day time limit, and the time limit is jurisdictional.

{¶ 16} In *In the Matter of R.C. Dependent Child,* 5th Dist. Guernsey No. 13 CA 14, 2014-Ohio-191, ¶ 19, this court noted the following:

> Ohio appellate courts have nonetheless recognized that "[a]lthough the time requirements are considered mandatory, a parent may waive them." *See, e.g., In re: D. W.,* 4th Dist. Athens No. 06CA42, 2007-Ohio-2552, ¶ 14, citing *In re Kutzli* (1991), 71 Ohio App.3d 843, 845–846, 595 N.E.2d 1026. "A party implicitly waives the time-limit when the party 'fails to move for dismissal when it becomes the party's right to do so, or when the party assists in the delay of the hearing.' " *Id.,* quoting *In re A.P.,* Butler App. No. CA2005-10-425, 2006-Ohio-2717, ¶ 13.

{¶ 17} In the *A.P.* case, the Twelfth District reviewed a case wherein the appellant agreed to a date outside the time limit and then raised the untimely issue on the day of hearing. The court found the appellant did not file his motion in compliance with Juv.R. 22(E). "That rule requires that all prehearing motions, except for motions to determine whether a child is eligible to receive a sentence as a serious youthful offender, be filed by the earlier of: '(1) seven days prior to the hearing, or (2) ten days after the appearance of counsel.' "

{¶ 18} In the case sub judice, the complaints were filed on April 19, 2017. The adjudicatory hearing was held on June 30, 2017. At the conclusion of the hearing, the magistrate found the children to be dependent. June 30, 2017 T. at 232-233. The trial court then asked the parties if they wished to have a separate hearing on disposition, and the parties answered in the negative. *Id.* at 233. Appellant's attorney specifically waived any dispositional delay. *Id.* After this discussion, the magistrate indicated he wanted "to have some more information before I make a disposition in this matter. So I am going to continue this matter for a separate dispositional hearing." *Id.* at 233-234. The magistrate ordered appellant to follow through on the medical care for one of the children, and ordered her to give the agency the opportunity to visit her home "so they can determine the appropriateness of that home for the children." T. at 234. The magistrate journalized his decisions on July 14, 2017, which included notices of the dispositional hearing set for August 4, 2017.

{¶ 19} The dispositional hearing went forward on August 4, 2017. Prior to the start of the hearing, appellant made an oral motion to dismiss "because we are beyond the 90 day, the time limit, excuse me." August 4, 2017 T. at 7. The magistrate denied the motion, finding "[w]e commenced our trial within the 90-day time limit. Uh based on the case law, that's the standard we have to meet." *Id.*

{¶ 20} In denying appellant's objections on the issue, the trial court found the following:

Although Attorney Avery and his client had actual notice that the dispositional hearing had been scheduled for a date 107 days after the filing

of the Complaint; and although they had 20 days from and after the filing of the adjudicatory Magistrate's Decision within which to file an objection to the dispositional hearing being scheduled outside of the parameters of Ohio Juvenile Rule 34(A) and O.R.C. §2151.35(B)(1), no written objection was ever filed with the Court. Further, it was not until the actual dispositional hearing on August 4, 2017 that Attorney Avery and his client first objected orally to the disposition being conducted outside of the 90-day parameter, and thereupon orally requested that the Complaint/case be dismissed due to time requirements.

Upon consideration of the unique procedural facts regarding this case, and notwithstanding the time directives of Ohio Juvenile Rule 34(A) and O.R.C. §2151.35(B)(1), the Court finds that Ms. [H]'s Objections to the Magistrate's refusal to dismiss the case are without merit for the following reasons: 1) The conduct of Attorney Avery and his client in failing to timely object to the dispositional hearing being scheduled outside of rule/statutory time parameters, when they had ample opportunity to do so, constituted an implied-in-fact waiver regarding the time directives; 2) Notwithstanding the import and purpose of rule/statutory case processing time directives, a party may not "sit" on his/her rights when action is reasonably called for and may reasonably be taken, to rectify a scheduling anomaly, and then wait until the dispositional hearing to orally move for dismissal of the case. For this Court to give credence or support to such dilatory trial tactics, under the unique facts of this case, would not serve the interests of the administration of

justice, especially upon consideration of the relatively minor time infringement herein of Ohio Juvenile Rule 34(A) and O.R.C. §2151.35(B)(1) and the investment of the court and all parties concerned to bring this case to a just conclusion; 3) Notwithstanding that some appellate courts consider the time requirements of Ohio Juvenile Rule 34(A) and O.R.C. §2151.35(B)(1) to be "directory," and others find the requirements to be "mandatory," this Court opines that the better and more reasonable view is to construe the rule/statutory time requirement as directory under the unique facts of this case. Regardless, if error occurred, the same should be construed as harmless technical error, as all parties were afforded substantial procedural due process.

The Court further notes that there is an additional important reason as to why this case should not be dismissed for time delays reasons: Upon a careful analysis of the colloquy between the Magistrate and the parties at the conclusion of the adjudicatory hearing on June 30, 2017, the Magistrate had actually timely commenced the dispositional hearing within the time requirements of Ohio Juvenile Rule 34(A) and O.R.C. §2151.35(B)(1), but because the Court needed additional information, it continued the dispositional hearing to the August 4 date. See Tr. pps. 232-234. Hence, the dispositional hearing was, under the unique facts herein, commenced within 90 days but concluded after the 90-day timeline. Accordingly, initiation of disposition was timely conducted pursuant to law, based upon its commencement date.

{¶ 21} We disagree with the trial court's analysis that the dispositional hearing commenced within ninety days. A careful reading of the conclusion of the adjudicatory hearing indicates the magistrate specifically stated he was going to continue the matter for a "separate dispositional hearing" to gather more information. June 30, 2017 T. at 2233-234. Although the magistrate used the word "continue," he never actually commenced a dispositional hearing. In fact, he specially asked the parties if they wanted a dispositional hearing and they responded in the negative. *Id.* at 233.

{¶ 22} We agree this case has unique facts. Appellant was made aware on July 14, 2017, that the dispositional hearing was scheduled on a date beyond the ninety day time limit, but chose not to move for dismissal until the hearing in contravention of Juv.R. 22(E).

{¶ 23} Furthermore, we find appellant assisted in the reason for the delay of the hearing. As discussed infra, the magistrate heard testimony of appellant's uncooperative behaviors. Appellant failed to pursue follow up medical care for one of the children, and refused to provide her current address to the caseworker for the caseworker to review the children's living arrangements. Another caseworker attempted home visits, but appellant was never home or cancelled.

{¶ 24} Appellant testified she had scheduled a follow up doctor's visit for the subject child on the advice of counsel, and did not cooperate with the agency because any allegations were "foolishness." T. at 191.

{¶ 25} The magistrate had before him conflicting testimony. In order to make an informed decision, the magistrate desired more evidence and gave appellant the

opportunity to cooperate with the agency. Because of appellant's uncooperative behavior during the investigation, coupled with the magistrate's desire to be fully informed and have a clear picture of the situation before him, we find appellant assisted in the delay of the hearing and in effect, waived her right to a ninety day dispositional hearing.

{¶ 26} Upon review, we find the trial court did not err in denying appellant's motion to dismiss under R.C. 2151.35(B)(1).

{¶ 27} Assignment of Error IV is denied.

I, II, III

{¶ 28} In her first, second, and third assignments of error, appellant claims the trial court's finding of dependency was against the sufficiency and manifest weight of the evidence and was based on evidence that was not competent or credible. We disagree.

{¶ 29} Sufficiency of the evidence "is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict [decision] is a question of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 30} On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In *Thompkins, supra,* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990), the Supreme Court of Ohio explained the following:

Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief*."  (Emphasis sic.)

{¶ 31} In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings.  *Eastley v. Volkman,* 132 Ohio St .3d 328, 2012-Ohio-2179, 972 N.E.2d 517.

{¶ 32} As explained by this court in *In re G. McC.,* 5th Dist. Stark Nos. 2013CA00103 and 2013CA00106, 2013-Ohio-5310, ¶ 28:

As this Court stated in *In re Pierce,* 5th Dist. Muskingum No. CT2008-0019, 2008-Ohio-6716, a trial court's adjudication of a child as abused, neglected, or dependent must be supported by clear and convincing evidence.  R.C. 2151.35.  Clear and convincing evidence is that which produces "in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."  *In Re: Adoption of Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954).  When this Court reviews an adjudication to

determine whether the judgment is supported by clear and convincing evidence, we must determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing degree of proof. *In Re: Christian,* 4th Dist. Athens No. 04CA10, 2004-Ohio-3146, citations omitted.

{¶ 33} R.C. 2151.04 defines "dependent child" as any child:

(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian;

(B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;

(C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;

(D) To whom both of the following apply:

(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.

(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

{¶ 34} Appellant challenges the trial court's findings that she failed to procure recommended medical treatment for one of the children, she and her significant other administered excessive corporal punishment to the children, and she engaged in sexual activity observable by the children. Appellant argues the testimony on these issues was not credible and consisted of unreliable hearsay.

{¶ 35} The magistrate heard from seven witnesses, the children's school principal Amy Oswalt, father, paternal grandmother B.M., the family's caseworkers Sarah Owen Hammad and Erin Magers, guardian ad litem Denise Iden-Koffel, and appellant.

{¶ 36} Ms. Oswalt testified the children had "probably over 70" tardies. T. at 15, 18; Exhibits A and B. The school communicated with appellant and father, but the tardies continued. T. at 16, 18-19. The tardies were harmful to the educational process. T. at 25. Also, the children often did not have a lunch with them and somebody would have to bring them lunch as the school did not have a commercial kitchen. T. at 19. The absence of lunch and the arrival of the lunch caused disruption to the educational process. T. at 20.

{¶ 37} Father testified about violence towards the children, going over to appellant's home and seeing one child with a bloody ear and injuries to a child's arm from pulling. T. at 44. Father witnessed appellant punch one of the children and verbally abuse the children. T. at 74-75, 79. One of the children suffered a head injury from playing with a cousin in October 2016 and was complaining about his stomach and head hurting in February 2017. T. at 45, 53, 158-159. Father sought medical care, but did not follow up with any doctors because he was never called with a referral. T. at 47-49, 53-

55. Also, he did not have health insurance for the children. T. at 66-67. Father stated the children were never tardy when they stayed with his mother. T. at 55. It was appellant's responsibility to pick up the children and take them to school, but she was often late or a no-show and his mother would take them to school. T. at 68-69. Father testified appellant and her boyfriend did "foul things in front of the kids." T. at 71. Father explained one of the children took pictures and showed their grandmother. T. at 71-72.

{¶ 38} Paternal grandmother B.M. testified appellant was to take the children to school, but many times she was late or did not show up. T. at 83-84, 100-101, 104. She stated when appellant got mad, she would punch the children. T. at 87, 107-108. The children have dental problems and although appellant has taken the children to the dentist in the past, no new appointments have been scheduled because of a lack of a medical card. T. at 88-89. The children told B.M. of observing appellant and her boyfriend having sexual relations. T. at 95-96, 104.

{¶ 39} Caseworker Owen Hammad testified concerns with the children included excessive physical abuse, questionable living arrangements, and "medical care not being followed up with." T. at 110-111. Her investigation revealed multiple tardies and some absences from school, and follow up medical care was not pursued for the headaches of one of the children. T. at 112, 118. She spoke to appellant about her concerns, but appellant was uncooperative. T. at 111-112. She was unable to see the children's living arrangements because appellant would not provide her current address. T. at 113-115, 118-119.

{¶ 40} Caseworker Magers testified she attempted unannounced home visits, but appellant was never home. T. at 123-124. She attempted to schedule a home visit with

appellant, but appellant cancelled. T. at 123-125. Appellant gave Ms. Magers her new phone number, but other than that, she has been uncooperative. T. at 126. The children have complained to Ms. Magers that "their teeth are hurting for them to eat." T. at 130. They also told her they "were both afraid to go home with their mom" because "of the physical abuse from her and her boyfriend." T. at 131. Ms. Magers was concerned about their numerous tardies and absences. T. at 131-132. When confronted about follow up care for one of the children's headaches, appellant admitted to knowing it was necessary, but stated it was father's responsibility to take the child. T. at 133.

{¶ 41} Guardian ad litem Iden-Koffel was called by appellant. She testified she visited appellant's home and found it to be suitable. T. at 142. She recommended the placement of a curtain between the living room and appellant's bedroom because the children slept on the couches and they could see into the bedroom. T. at 144-145. One of the children showed her some old scars and told her they were from abuse (appellant scratching with her nails and spanking with a belt). T. at 143-144. She would recommend that the children reside with appellant as the custodial parent. T. at 149.

{¶ 42} Appellant testified her son suffered a head injury while playing with his cousin at the end of October 2016 and she took him to a doctor sometime in November 2016. T. at 158-159. Appellant was unaware of the incident until November. T. at 182. The doctor said the child was fine and did not recommend a specialist. T. at 159. Father took the child to a doctor in February 2017 because the child was complaining of head and stomach aches. T. at 160. Appellant was unaware of this visit until she received medical papers for the child in May 2017. T. at 163. She has scheduled a follow up visit for the child with a neurologist on the advice of counsel. T. at 177-178, 260-207, 228.

Appellant had lost her medical insurance in January or February 2017 because her work hours were cut to part-time. T. at 164-165, 168. She was currently on a six month leave to get "everything situated." T. at 206. She applied for a medical card through the agency in May or June 2017. T. at 165-167, 186. The children were always covered under Medicaid as a secondary insurance, but appellant missed the renewal paperwork and the insurance lapsed, so she had to start the application process all over again. T. at 167. The children did not have health insurance at the date of the hearing. T. at 187. She admitted to physically striking the children with an open hand, but not with a closed fist. T. at 170. She has hit them with physical objects i.e, a belt, paint stick, wooden spoon, usually on their bottoms, but not frequently. T. at 175-176. Behaviors warranting a "whooping" included repetitive behaviors such as fighting, disrespectfulness, not listening, talking back, and raising their voices. T. at 196-197. She denied ever causing them injury. T. at 170. She never observed her boyfriend abuse the children. T. at 181. Appellant explained the school tardies were caused by the breakdown in the relationship and communication between herself and B.M. T. at 171-172. She accepted responsibility for the tardies, she admitted to "dropping the ball." T. at 173. She denied ever being contacted by the school about the tardies. T. at 174, 189. Appellant explained the children wanted a hot lunch, so their lunches were dropped off at the start of their lunch time. T. at 173-174. She denied that the children observed her having sexual relations. T. at 178, 207. The children see a dentist, albeit "last year," and are experiencing losing their baby teeth and their adult teeth coming through. T. at 180-181, 200. She was not cooperative with the agency because abuse allegations "was just foolishness and it didn't make any sense." T. at 191-192.

{¶ 43} As with any trial, the magistrate had before him conflicting testimony. We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182, 552 N.E.2d 180 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 44} We find the record contains sufficient evidence, if believed, to support the trial court's findings of fact. On the challenged issues, appellant stated if father wanted a follow up appointment with a neurologist, he could arrange it, then stated she had scheduled an appointment after her counsel encouraged her to do so, she admitted to striking the children with an open hand and various objects, and there was no indication that father and/or B.M. made up the story about the children observing the sexual relations as they were not familiar with the layout of appellant's home. Appellant accepted full responsibility for the tardies, and acknowledged she was uncooperative with caseworkers because it was all "foolishness."

{¶ 45} Upon review, we find the trial court did not lose its way in finding dependency under R.C. 2151.04 by clear and convincing evidence.

{¶ 46} Assignments of Error I, II, and III are denied.

V

{¶ 47} In her fifth assignment of error, appellant claims the magistrate should have recused himself to prevent the appearance of impropriety. We disagree.

{¶ 48} Appellant argues the magistrate gave the appearance of impropriety by disclosing that he had formerly represented B.M. and then "ruled in grandmother's favor." Appellant's Brief at 14.

{¶ 49} In the interest of full disclosure, the magistrate explained that he represented B.M. approximately thirty to thirty-five years prior in "some minor workers' comp or personal injury, or both issues," and "I've had no contact with her since that time." T. at 5. The magistrate indicated, "I don't see it as interfering with my ability to give anybody a fair hearing today." T. at 4. He then asked appellant's counsel, "Mr. Avery, does that give you and your client any problem at this time?" *Id.* Appellant's counsel responded, "I don't believe it does, but I want to I guess preserve the, an objection for the record, if I can." *Id.* The magistrate permitted him to do so.

{¶ 50} The proper procedure for seeking recusal is found in R.C. 2701.03(A) which states the following:

> If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section.

{¶ 51} There is no indication in the record that this procedure was followed.  In fact, appellant's counsel never asked the magistrate to recuse himself.  Apparently appellant is arguing that the magistrate should have taken it upon himself to step aside.

{¶ 52} Appellant has not demonstrated any bias or prejudice to the magistrate hearing the case.  The magistrate did not "rule in grandmother's favor," but found dependency pursuant to a complaint filed by the agency.

{¶ 53} Upon review, we do not find this assignment of error to have any merit.

{¶ 54} Assignment of Error V is denied.

{¶ 55} The judgments of the Court of Common Pleas of Richland County, Ohio, Juvenile Division are hereby affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Baldwin, J. concur.

EEW/db 622